UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORIE A. WHITE,

                         Plaintiff,

v.                                                     3:24-CV-0613
                                                     (GTS/TWD)
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                         Defendant.
_____

APPEARANCES:                                                 OF COUNSEL:

LAW OFFICES OF ANDREW J. CARBOY          ANDREW J. CARBOY, ESQ.
  Counsel for Plaintiff
1 Liberty Plaza, 23rd Floor
New York, NY 10006

BARCLAY DAMON LLP                                 MARK T. WHITFORD, JR., ESQ.
  Counsel for Defendant
2000 Five Star Bank Plaza
100 Chestnut Street
Rochester, NY 14604-2072

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this breach-of-contract action filed by Lorie A. White ("Plaintiff") against State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"), is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 10.) For the reasons set forth below, Defendant's motion is granted.

**I.       RELEVANT BACKGROUND**

       **A.**       **Plaintiff's Complaint**

Generally, in her Complaint, Plaintiff asserts two claims: (1) a claim for breach of contract based on Plaintiff's automobile insurance agreement with Defendant for Supplementary Uninsured/Underinsured Motorist ("SUM") coverage, because Defendant denied SUM benefits related to a motor vehicle accident in which Plaintiff suffered bodily injury ("First Claim"); and (2) a claim for bad faith by engaging in a willful and unjustified refusal to grant SUM benefits ("Second Claim").[1]  (Dkt. No. 2.)

### B. Parties' Briefing on Defendant's Motion to Dismiss

#### 1. Defendant's Memorandum of Law

Generally, in its motion to dismiss, Defendant makes two arguments.  (Dkt. No. 10, Attach. 6.)  First, Defendant argues that Plaintiff's breach-of-contract claim must be dismissed because she is not entitled to SUM benefits under her policy.  (*Id.* at 4-10.)  Specifically, Defendant argues that Plaintiff was not placed in a worse position than she would have been under her own policy because both her SUM policy and the tortfeasor's policy contain $300,000 per-accident limits, and Plaintiff, her husband, and her daughter (all three of whom were involved in the accident) were each paid $100,000 as settlement with the tortfeasor's insurance.  (*Id.*)  Because the per-accident limit of the SUM policy was reached, Defendant argues, Plaintiff is not entitled to any SUM amount despite the fact that the SUM policy also contains a concurrent $300,000 per-person limit.  (*Id.*)

---

[1]  Plaintiff's Complaint was originally filed in the New York Supreme Court in Tompkins County on March 27, 2024, and served on Defendant on April 4, 2024.  (Dkt. No. 1, Attach. 2-3.)  This action was removed to this Court by Defendant based on diversity jurisdiction on May 2, 2024.  (Dkt. No. 1.)

2

Second, Defendant argues that Plaintiff's bad faith claim must also be dismissed because it is duplicative of her breach-of-contract claim, and New York does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing where the plaintiff has already pled a breach-of-contract claim based on the same set of facts. (*Id.* at 10-12.)

### 2.   Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff makes three arguments. (Dkt. No. 12, Attach. 1.) First, Plaintiff argues that the Court should deny Defendant's motion because the denial of SUM benefits in this case was inconsistent with the policy reasons underlying New York's relevant insurance law given that the tortfeasor's policy did not provide as much coverage to Plaintiff as her own policy would provide to other injured motorists. (*Id.* at 9-11.)

Second, Plaintiff argues that the payments made to her husband and daughter cannot be used to offset her recovery under the $300,000 per-person limit because (a) the policies do not provide the same level of coverage per person even if the per-accident limits are the same, (b) exhaustion of the tortfeasor's split-limit policy does not relieve Defendant of its obligations under the SUM policy given that amounts paid to other individuals cannot be used as an offset without an express provision to that effect, and the policy here does not contain such an express provision, and (c) any ambiguity in the policy language must be construed in favor of Plaintiff at this stage of the proceeding. (*Id.* at 12-16.)

Third, Plaintiff argues that she has sufficiently pleaded that Defendant acted in bad faith as to her Second Claim (and concurrent request for attorney's fees), namely by unreasonably

3

determining that her more expensive single limit policy was no different than the tortfeasor's split-limit policy. (*Id.* at 16.)

### 3. Defendant's Reply Memorandum of Law

Generally, in reply to Plaintiff's opposition, Defendant makes two arguments. (Dkt. No. 13.) First, Defendant argues that Plaintiff is not entitled to SUM coverage for the relevant accident under the policy, because her responsive arguments ignore the fact that this was a multi-victim accident in which the per-accident limit of both policies had already been met by the payments made to Plaintiff, her husband, and her daughter, and therefore Defendant was not required to pay any other amount to Plaintiff for the same accident, regardless of the per-person limit. (*Id.* at 3-6.)

Second, Defendant again argues that Plaintiff's Second Claim for bad faith must be dismissed because, again, it is duplicative of her breach-of-contract claim, and she has not alleged facts plausibly suggesting bad faith separate from that contract claim. (*Id.* at 6-7.)

## II. GOVERNING LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

2   *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual

### III. ANALYSIS

#### A. Whether Plaintiff Has Stated a Claim for Breach of Contract

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant's memoranda of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis.

"The plain language of Insurance Law § 3420 . . . provides that SUM coverage is only triggered where the bodily injury liability insurance limits of the policy covering the tortfeasor's vehicle are less than the third-party liability limits of the policy under which a party is seeking SUM benefits." *Matter of Allstate Ins. Co. v. Rivera*, 12 N.Y.3d 602, 607-08 (N.Y. 2009). "This statute 'calls for a facial comparison of the policy limits without reduction from the judgment of other claims arising from the accident.'" *Rivera*, 12 N.Y.3d at 608 (quoting *Matter of Prudential*

---

background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Prop. & Cas. Co. v. Szeli*, 83 N.Y.2d 681, 686 [N.Y. 1994]). In addition, the Court of Appeals noted in *Rivera* that the "core principle underlying SUM coverage" is "that insureds can never use a SUM payment to obtain a greater recovery for themselves than is provided under the policy to third parties injured by the insureds." *Rivera*, 12 N.Y.3d at 610.

  Here, Plaintiff's arguments focus on the fact that the per-person limit in her SUM policy ($300,000) is higher than the per-person limit in the tortfeasor's policy ($100,000), and thus the tortfeasor's policy provided her with less protection for bodily injuries than did her own policy. However, Plaintiff's arguments effectively ignore the fact that both policies have per-accident limits of $300,000. More than thirty years ago, the New York Court of Appeals rejected an argument "that the per person limit ($100,000) in its policy rather than the per accident limit ($300,000) should be employed in the underinsurance comparison where there is a multiple-victim accident but only one underinsurance claimant." *Szeli*, 83 N.Y.2d at 687-88.

  As in *Szeli*, the accident underlying Plaintiff's claim for recovery involved multiple persons, only one of whom has brought an underinsurance claim. Because there are multiple injured individuals involved in the accident, it is the per-accident limit that the Court should look to when determining whether an undercoverage situation exists that would trigger SUM coverage. The documents attached to the Complaint show that the both the tortfeasor's policy and Plaintiff's SUM policy provide a $300,000 limit for bodily injury liability per accident, and therefore there is no relevant difference in coverage between the two policies. (Dkt. No. 2, Attach. 1, at 9, 29.)

  Moreover, even if the Court were to find that the difference in the per-person limits between the policies triggered SUM coverage, the facts alleged by Plaintiff do not plausibly

9

suggest that she would be entitled as a matter of law to any additional amount under her SUM policy. As discussed above, Plaintiff argues primarily that she is entitled to $200,000 from her SUM policy because she received only $100,000 as a result of a settlement related to the tortfeasor's policy, and her per-person limit under her SUM policy is $300,000. However, Plaintiff's argument ignores the fact that her policy also has a per-accident limit of $300,000, and that her husband and daughter each received $100,000 for bodily injuries sustained during the same accident. Because $300,000 was paid as a result of the claim for the accident, and because the SUM policy contains a $300,000 per-accident limit, there is no basis for recovery under the SUM policy.

This case is distinguishable from *Gross v. Travelers Ins.*, in which the Appellate Division for the Fourth Department found that SUM coverage was triggered where the policies involved were similar to those in this case (i.e., $100,000 per person and $300,000 per accident for the tortfeasor's policy, and $300,000 per person and $300,000 per accident for the plaintiff's SUM policy), because the circumstances triggering SUM coverage were different. *Gross*, 185 A.D.3d 1504, 1505 (N.Y. App. Div. 4th Dept. 2020). Notably, the Fourth Department's finding that there was a $200,000 difference in per-person coverage between the tortfeasor's coverage and the plaintiff's SUM coverage as to the per-person limit that would trigger SUM payment occurred where the amounts paid to the two injured insured did not reach the per-accident limit of the policy. *See Gross*, 185 A.D.2d at 1504-05 (noting that the per-accident limit was $300,000, whereas the plaintiff was paid $100,000 and his wife $16,000 by the tortfeasor's policy before applying for SUM coverage). Importantly, the Fourth Department observed that the plaintiff's "SUM benefit would be reduced by the amount paid to his wife under the policy's

10

$300,000 per accident maximum." *Id.* at 1505. Here, the amount paid to Plaintiff, her husband, and her daughter (who, again, each received $100,000) equaled the $300,000 per-accident limit on the SUM policy.

Thus, even if the Court were to acknowledge a facial inequality between the two policies as to the per-person limits, the deduction of the amounts paid to Plaintiff's husband and daughter as instructed in *Gross* would mean Plaintiff is still not entitled to anything more than the $100,000 she was already paid in her settlement, because any additional SUM payment would provide more than the $300,000 per-accident limit applicable to both relevant policies. That the SUM policy provides a $300,000 per-person limit does not result in a SUM payment under these circumstances because the concurrent per-accident limit cannot be read out of the policy.[3]

Plaintiff repeatedly states that the fact that she has paid more for her single-limit coverage suggests it cannot be treated the same as the tortfeasor's split-level coverage that provides a lower per-person limit merely because the two policies have the same per-accident limit. However, Plaintiff is not being unfairly disadvantaged here by being denied SUM benefits. Importantly, she, her husband, and her daughter have already been afforded the full $300,000 under the per-accident limit of the policies. Had she experienced the same accident while alone in the vehicle, she could have been entitled to recover SUM amounts up to the $300,000 per-

---

[3]     The Policy Booklet for Plaintiff's automobile insurance policy, which is attached to the Complaint, defines the limit for "Each Person" as "the most we will pay for all damages resulting from bodily injury to any one person injured in any one accident," while the limit for "Each Accident" is "the most we will pay, subject to the limit for 'Each Person,' for all damages resulting from bodily injury to two or more persons injured in the same accident." (Dkt. No. 2, Attach. 1, at 40.)

11

person limit.[4]  However, that is not what happened in this case.  The per-person limit cannot be read without also considering the per-accident limit in cases such as this where more than one insured sustained bodily injury covered under the policies and received payment from the tortfeasor's insurance.  Plaintiff's argument that the amounts paid to other individuals are effectively being used as an offset (unsupported by an express provision permitting that offset) is unpersuasive, because (again) it ignores the fact both policies have a per-accident limit of $300,000.

For all of the above reasons, Plaintiff has not alleged facts plausibly suggesting that Defendant breached its agreement by denying her claim for SUM coverage related to the relevant accident.  Plaintiff's breach-of-contract claim is therefore dismissed.

B.     **Whether Plaintiff's Claim of Bad Faith Must Be Dismissed**

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendant's memorandum of law.  *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order.  To those reasons, the Court adds the following two points.

---

[4]     This is the scenario presented in *Matter of Gov't Emps. Ins. Co. v. Lee*, 120 A.D.3d 497, 499 (N.Y. App. Div. 2d Dept. 2014).  The Appellate Division found that, regardless of the fact that the per-accident limits in the two policies were the same, the fact that the per-person limit in the SUM policy was higher than that in the tortfeasor's policy meant that the plaintiff had not received the same protection for which she afforded to others.  *Lee*, 120 A.D.3d at 499.  However, the plaintiff in that case was the only insured involved, and thus there were no payments to other insureds that would need to be deducted from the plaintiff's recovery related to the per-accident maximum.  This case notably does not stand for the proposition that, as Plaintiff argues, the per-accident limit is essentially irrelevant or should be disregarded because the SUM policy provides for $300,000 individual recovery, or that an insured is entitled to SUM payment in every case where the per-person limits are unequal regardless of any consideration of the per-accident limit in cases involving more than one injured insured.

First, Plaintiff's claim that Defendant acted in bad faith when denying her claim for SUM benefits is duplicative of her claim for breach of contract, because it is based on the same wrongful conduct underlying her breach-of-contract claim, i.e., the denial of SUM benefits pursuant to the insurance agreement. *See Multani v. Castlepoint Ins. Co.*, 221 A.D.3d 722, 725 (N.Y. App. Div. 2d Dept. 2023) (finding "the cause of action alleging bad faith is duplicative of the cause of action alleging breach of contract, and 'there is no separate tort for bad faith refusal to comply with an insurance contract'"); *cf. Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 325 (N.D.N.Y. 2017) (Hurd, J.) (finding claims not duplicative where they were predicated on different wrongful conduct and sought different relief).

Second, even if that claim were not duplicative, Plaintiff has not included factual allegations plausibly suggesting any bad faith on the part of Defendant in denying her claim for SUM benefits. Indeed, Plaintiff's arguments regarding bad faith are premised on assertions that Defendant violated New York law and breached the contract when denying her claim, arguments that the Court has already rejected. What is left is the implication that Defendants must have acted in bad faith because otherwise they would have approved her claim. However, setting aside this argument's circular nature, this argument does not persuade the Court of bad faith in Defendant's actions, because the Court has already discussed why that denial was supported by both the policy and New York law.

For these reasons, the Court grants Defendant's motion to dismiss the Second Claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 2) is **<u>DISMISSED</u>**.

Dated: February 4, 2025
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge